**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

INTERNATIONAL SUPPLY, LLC and :
INTERNATIONAL FRAMERS, LLC :
    *Plaintiffs*, :
     :   Case No.: 3:22-CV-1167 (OAW)
v. :
     :
HUDSON MERIDIAN CONTRUCTION :
GROUP, LLC, :
    *Defendant*. :

<u>**RULING ON DEFENDANT'S MOTION TO DISMISS**</u>

**THIS ACTION** is before the court upon Defendant's Motion to Dismiss and memorandum in support thereof (together, "Motion").  *See* ECF Nos. 16 and 16-1. Defendant Hudson Meridian Construction Group, LLC ("Defendant" or "Hudson") is a contractor overseeing a multi-family apartment complex project.  In 2022, Defendant entered into letters of intent with Plaintiffs International Framers, LLC ("Plaintiff Framers") and International Supply, LLC ("Plaintiff Supply") (collectively, "Plaintiffs") to perform subcontractor work on the wood framing portion of the project.  Plaintiffs bought materials in reliance on the project, but Defendant ultimately rescinded the letters before entering into a formal contract.  Plaintiffs brought claims for breach of contract, promissory estoppel, breach of implied covenant of good faith and fair dealing, and a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 42-110a et seq.  Defendant moves to dismiss all counts.  The court has reviewed the Motion, Plaintiff's opposition to the Motion ("Opposition"), *see* ECF No. 25, Defendant's reply brief, *see* ECF No. 28 ("Reply").  For the reasons below, the Motion is **DENIED.**

I.    **BACKGROUND**[1]

In 2019, Defendant was retained as a contractor to build multi-family apartments in New Haven, Connecticut ("Project").  *See* Compl. ¶ 11, ECF No. 1.  Defendant approached Plaintiff Framers to be the subcontractor for the wood framing portion of the Project.  *Id.* ¶ 12.  The parties began to discuss drawings, specifications, and pricing, but the Project was put on an indefinite hold at the onset of the COVID-19 pandemic.  *Id.* ¶¶ 12–18.  When the Project resumed, Defendant sought a bid from Plaintiff Framers, and it informed Plaintiff Framers that it had an equity interest in the project, and that it was in the process of securing financing therefor.  *Id.* ¶¶ 19–21.

Plaintiff Supply organized in January 2021.  *Id.* ¶ 24.  On an unspecified date, Plaintiff Supply informed Defendant the price of materials but stated it immediately needed a contract before costs rose.  *Id.* ¶ 25.

On February 8, 2022, Defendant e-mailed letters of intent to both Plaintiffs.  *See* Def.'s Exs. 1 & 2, ECF Nos. 16-3 & 16-4.  The Supply Letter confirmed Defendant's "intent to enter into a Contract" for furnishing the wood framing materials at a price of $6,911,000.  Def.'s Ex. 1.  The letter to Plaintiff Framers confirmed Defendant's "intent to enter into a Contract" for the wood framing labor at a price of $3,230,000.  Def.'s Ex. 2.  The remainder

---

[1] In this Background section, the court cites allegations from the complaint, and from the letters of intent. Because the letters of intent were submitted as exhibits to Defendant's motion and were explicitly referenced in the complaint, the court will consider them.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 194, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.");  *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (permitting court to rely on document not incorporated by reference when "the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint") (internal quotations marks omitted).

of each letter of intent stated the following:

> By execution of this Letter of Intent, you agree to the Contract Price.  The final Trade Contract will be forwarded to your attention shortly.  **Please sign and return this letter as soon as possible.**

> This Letter of Intent may be rescinded by Hudson Meridian at any time, subject to the terms of the Trade Contract.

> We look forward to your services on the project and the final execution of the Trade Contract.

Def.'s Exs. 1 & 2 (emphasis in original).   In the e-mail to Plaintiff Supply, Defendant indicated that the $6.911 million contract price included a $150,000 allowance for hardware, and a $100,000 credit allowance for anticipated engineering costs.   *See* Compl. ¶ 26.   Daniel Soares, Plaintiffs' Vice President of Finance and Operations, requested to revise the Supply Letter to include the allowance.  Defendant refused, stating that it needed to show the letters of intent to the bank, that he would include the allowances in the contract, and that he would send the contract the following day.  *Id.* ¶ 27.  Defendant further indicated, "We can work on the wording in the contract so all are comfortable."  *Id.*

In reliance on Defendant's promise to include the allowances in the contract, Soares signed both letters of intent on February 11, 2022.  *See id.* ¶¶ 28–31; Def.'s Exs. 1 & 2.  Plaintiff Supply also entered into material contracts with suppliers in reliance on Defendant's promises.  Compl. ¶ 29.  However, Defendants never sent the contracts to Plaintiffs.  *Id.* ¶ 31.  Instead, on June 16, 2022, Defendants rescinded the letters of intent. *See id.* ¶¶ 34–35.


## II.    **LEGAL STANDARD**

To withstand a motion to dismiss brought pursuant to Rule 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). However, when reviewing a 12(b)(6) motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

### III.   **DISCUSSION**

The parties agree that Connecticut law governs this diversity case. *See* Motion at 3 n.4; *see generally* Opp'n (citing Connecticut law). Defendant moves to dismiss each of Plaintiffs' breach of contract claims (Counts One and Three), Plaintiff Supply's promissory estoppel claim (Count Two), Plaintiffs' breach of implied covenant of good faith and fair dealing claim (Count Four); and Plaintiffs' CUTPA violation (Count Five). The court will address these claims seriatim.

4

A.   **Breach of Contract (Counts One and Three)**

"The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014). At the motion to dismiss stage, Defendant challenges only the first element. Specifically, the parties dispute whether the letters of intent formed valid and binding contracts.

It is a fundamental principle of contract formation that "an agreement must be definite and certain as to its terms and requirements." *Glazer v. Dress Barn Inc.*, 274 Conn. 33, 51 (2005). Conversely, "where the memorandum appears [to be] no more than a statement of some of the essential features of a proposed contract and not a complete statement of all the essential terms, the plaintiff has failed to prove the existence of an agreement." *Suffield Dvlp. Assocs. Ltd. P'ship v. Society for Savings*, 243 Conn. 832, 843 (1998); *see Mini Melts USA, Inc. v. Mini Melts, Inc.*, No. 3:15-cv-01704, 2017 WL 4127900, at *3 (D. Conn. Sept. 18, 2017) (stating an "agreement to agree" is not a binding contract). "Parties, however, may form a binding contract even if some *nonessential* terms of their agreement are indefinite or left to further negotiations." *Bayer v. Showmotion, Inc.*, 292 Conn. 381, 411 (2009) (emphasis added).

When contract formation is at issue, "there is no bright line rule describing the essential elements of any and all enforceable contracts." *111 Whitney Ave., Inc. v. Comm'r of Mental Retardation*, 70 Conn. App. 692, 701 (Conn. App. Ct. 2002). This means that "[w]hether a term is essential turns on the particular circumstances of each case." *Id.* (internal quotation marks removed); *Willow Funding Co. v. Grencom Assocs.*, 63 Conn. App. 832, 844 (Conn. App. Ct. 2001) ("Under the modern law of contract, if the

parties so intend, they may reach a binding agreement even if some of the terms of that agreement are still indefinite."). Broadly speaking, "whether there was a binding contractual relationship between the parties" typically is a question for the factfinder. *Glazer*, 274 Conn. at 54–55; *Klewin Dvlp. LLC v. AR Bld'g Co., Inc.*, CV176031223, 2018 WL 1787019, at * 2 (Conn. Super. Ct. Mar. 19, 2018) (Hon. Matthew E. Frechette, J.) (stating that, at the pleading stage for a breach of contract action, "[i]t is not necessary to allege specific terms of the contract" as the question of "[w]hether the terms of the contract support that allegation is a factual question to be determined by the fact finder").

Under Connecticut law, a letter of intent generally is thought to be a non-binding, written document establishing "the initial framework from which the parties might later negotiate a final … agreement if the deal works out…." *Id.* at 76 n.33. However, the Supreme Court of Connecticut has made clear that this is not a per se rule. In adopting reasoning from the United States Court of Appeals for the Ninth Circuit, and from the District of Columbia Circuit, the Supreme Court of Connecticut explained that "[r]egardless of the title, if the content shows that the parties intended to be bound, and the other requisites of a contract have been satisfied, it may be a contract." *Id.* Whether parties intended to be bound by an informal contract (such as a letter of intent) turns on the factfinder's assessment of "(1) the language used, (2) the circumstances surrounding the transaction, and (3) the purpose that they sought to accomplish." *Squillante et al. v. Cap. Region Dvlp. Auth.*, No. HHDCV166070594S, 2018 WL 3715671, at *4 (Conn. Super. Ct. Jul. 18, 2018) (Hon. Cesar A. Noble, J.), aff'd and adopted by *Squillante v. Cap. Region Dvlp. Auth.*, 208 Conn. App. 676, 689 (2021); *Pavavich v. Genest*, No. CV020467602S, 2004 WL 504238, at *5 (Conn. Super. Ct. Feb. 23, 2004) (Hon. Richard

E. Arnold, J.) (explaining that "the information contained in the letter of intent is in itself sufficient to establish probable cause to sustain the minimum requirements for a binding contract for the sale of real property" but denying summary judgment because the question of "what the parties intended to encompass in their contractual commitments" is a question of fact).

The court finds that Plaintiff alleges facts that these particular letters of intent are sufficiently definite to constitute binding contracts. Specifically, the letters of intent include the name and location of the project, the identities and business addresses of the contractor and subcontractor, a general description of the work to be performed, and the performance price. For this particular case, whether these essential terms form a binding contract or merely a partial agreement is a question that cannot be resolved at the pleading stage. *111 Whitney Ave.*, 70 Conn. App. at 701.

Aside from these terms, additional language also gives rise to the parties' intent to be bound. First, the letters refer to Defendant's intent to enter into a "Contract" and specify that Plaintiff should "agree to the Contract Price," but they also indicate that a "final Trade Contract will be forwarded to [Plaintiffs] shortly." Def.'s Exs. 1 & 2. The usage of capitalized terms, i.e. "Contract" and "Trade Contract," suggests that these references have particular meanings, including, for example, that these contracts already exist (whether in draft or final form). Second, *only* Defendant was permitted to rescind the letters, which it could do "at any time, subject to the terms of the Trade Contract"—this suggests that the parties intended to bind Plaintiffs to the letters, and possibly to restrict Defendant's ability to rescind.[2] Def.'s Exs. 1 & 2. Indeed, the parties could have chosen

---

[2] The Supreme Court of Connecticut defines "rescission" as follows: "Rescission, simply stated, is the unmaking of a contract. It is a renouncement of the contract and any property obtained pursuant to the

to say the letters were "non-binding," but they did not.  Third, the letter concludes with, "We look to your services on the project and the final execution of the Trade Contract." Def.'s Exs. 1 & 2.  This definitive language suggests the parties' intent to be bound.

Lastly, other allegations in the pleadings suggest that the parties agreed to be bound by the letters of intent and that Defendant would follow up with a contract effectuating the parties' terms.  Namely, Defendant explained that it would add Plaintiffs' requested language to the final contract, so long as the Plaintiffs immediately signed and returned the letters of intent.  *See* Compl. ¶¶ 28–31.  It could turn out that evidence establishes that the parties never had a true meeting of the minds.  *See Downing v. Dragone*, 216 Conn. App. 306, 317 (Conn. App. Ct. 2022) ("[T]o prove the formation of an enforceable agreement, a plaintiff must establish the existence of a mutual assent, or a meeting of the minds.")   Given that the court is limited to the pleadings and incorporated documents, dismissal is not appropriate at this stage.  Defendant's Motion is **DENIED** as to Counts One and Three.

### B.  Promissory Estoppel (Count Two)

When parties are not bound by an enforceable contract, the doctrine of promissory estoppel provides an alternative, equitable basis for a plaintiff to recover damages incurred in reliance on a defendant's broken promise.  *See D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High Sch.*, 202 Conn. 206, 213 (1987).  Rule 8(d) of the Federal Rules of Civil Procedure permits a plaintiff to plead alternative theories for relief, such as

---

contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract. A condition precedent to rescission is the offer to restore the other party to its former condition as nearly as possible." *Metcalfe v. Talarski*, 213 Conn. 145, 153 (1989) (quoting *Kovarco v. T.J.E., Inc.*, 2 Conn. App. 294, 299 (Conn. App. Ct. 1984) (overruled by *Kaczynski v. Kaczynski*, 294 Conn. 121 (2009) on other grounds).  The reference to "rescission"—even within a "right to rescission" clause—suggests that the parties construed the letters of intent as enforceable contracts.

breach of contract and promissory estoppel.[3]  *See Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 374 (D. Conn. 2012).[4]  To prevail on promissory estoppel, a plaintiff must plead and ultimately prove "(1) the promisor has failed to honor a clear and definite promise that (2) the promisor reasonably should expect to induce detrimental action or forbearance on the part of the promisee or a third person, and (3) the promise does, in fact, induce detrimental action or forbearance in reasonable reliance on the promise."  *Kent*, 338 Conn. at 210.

The pleadings establish all three elements of Plaintiff Supply's promissory estoppel claim.  With respect to the first element, "the promise must reflect a present intent to commit as distinguished from a mere statement of intent to contract in the future."  *Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96, 105 (2003).  In other words, the "definiteness" and "clarity" of a promise need not rise to the level of an offer to contract, *see id.*, but it must be more than an "expression[ ] of intention, hope, desire or opinion," *id.* at 106.  Here, on February 8, 2022, Defendant sent Plaintiff Supply a letter of intent to furnish the wood framing materials for the Project, specifying "[t]he contract amount of $6,911,000.00 includes [a] $150,000 allowance for necessary hardware and an allowance credit of $100,000 for anticipated Value engineering of the framing materials."  *See Compl.* ¶¶ 26.  Defendant articulated the process for submitting monthly invoices, and informed Plaintiff Supply that it "will be sending" a "formal and complete contract … in the

---

[3] In general, the existence of a valid contract precludes liability under promissory estoppel.  *See Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*, 338 Conn. 189, 210 (2021).  The exception to the rule is when the promissory estoppel claim "addresses aspects of the parties' [contractual] relationship that are collateral to the subject matter, and does not directly vary or contradict the terms, of the written agreement."  *Id.* at 211.

[4] Ultimately, the evidence may preclude Plaintiff Supply's promissory estoppel claim if it succeeds in establishing a valid contract.  *See id.*; *Kent*, 338 Conn. at 210 ("As a general matter, when an enforceable contract exists … parties cannot assert a claim for promissory estoppel on the basis of alleged promises that contract the written contract.") (internal quotation marks omitted).

near future." *Id.* According to Plaintiffs, the "definite and clear promise" was the promise to send a contract in the near future. *See* Opp'n at 6. The court finds the detailed expression of the contract price, payment method, and time frame in which a "formal and complete" contract would be sent to be sufficiently definite and clear so as to satisfy the first element. Indeed, "whether a representation is a promise is generally a question of fact, to be determined in light of the circumstances under which the representation was made." *Stewart*, 267 Conn. at 106.

As for the second element, the plaintiff's reliance must be reasonable under an objective standard. *Stewart*, 267 Conn. at 105; *c.f. Wellington Sys., Inc. v. Redding Grp., Inc.*, 49 Conn. App. 152, 162 (Conn. App. Ct. 1998) ("[A] promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all."). Plaintiff Supply alleges that it informed Defendant that material prices were increasing, *see* Compl. ¶ 22, and that Defendant stated that it needed to submit the letter of intent to the bank, but that it would incorporate Plaintiff Supply's requested changes into the forthcoming contract, *see id.* ¶ 27. Furthermore, Defendant explicitly stated, "We can work on the wording in the contract so all are comfortable." *Id.* The court finds these allegations, together with those establishing the first element, satisfy the second element insofar as it is objectively reasonable that Plaintiff Supply acted on Defendant's promise to send the contract, given that Defendant already had explained the contract price, payment method, and forthcoming final contract.

Finally, a plaintiff satisfies the third element if it pleads that its reliance on the defendant's promise "result[ed] in a detrimental change in the plaintiff's position." *Stewart*, 267 Conn. at 113; *Wellington*, 49 Conn. App. at 162–63 (stating a plaintiff must allege

injury from "chang[ing] its position in reliance on" defendant's promise).   "A mere allegation that defendant suffered damages without particular facts as to how [it] was damaged does not satisfy *Twombly* and *Iqbal*."   *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, --- F. Supp. 3d ---, 2023 WL 3868585, at *12 (S.D.N.Y. Jun. 7, 2023). Here, in drawing all reasonable conclusions in favor of the plaintiff, the court finds the complaint contains particularized facts beyond that Plaintiff merely "suffered damages." Plaintiff Supply "entered into agreements with suppliers," Compl. ¶ 29—after estimating and discussing with Defendant the costs of such supplies, *id.* ¶ 16, 20, 22–23, 25–27— and became obligated to pay for those supplies, *see* Opp'n at 6, in reliance on Defendant's promise to send the contracts, and Defendant's representation: "You will be able to invoice monthly for material deposits that can be scheduled in advance so that your 10 day payment terms with your suppliers can be satisfied," Compl. ¶ 26.  The court recognizes the pleadings do not explicitly state that Plaintiff Supply *was* required to pay its suppliers, but, at this early pleading stage (and in a close call), the court finds the allegation that Plaintiff Supply entered into contracts in reliance on Defendant's promise is sufficient to establish that Plaintiff Supply sustained damages.  It may be that Plaintiff Supply cannot ultimately prove it has suffered an injury, but the court leaves Plaintiff to its proof.

The court is not persuaded by Defendant's arguments.  As an initial matter, Defendant improperly focuses on the letter of intent—arguing that it is not a sufficiently definite and clear promise—and largely disregards Plaintiffs' contention that the applicable "promise" was made in the e-mail on February 8, 2022.  *See* Motion at 5–6; Reply at 4.  Its arguments as to the first and second elements (including its case law that

involves factually distinct employment actions) therefore are inapposite. Second, Defendant improperly relies on case law addressing injury at the summary judgment stage. *See* Motion at 6; Reply at 5. Because the court finds that Plaintiff satisfies the *Twombly/Iqbal* standard, its consideration of jurisprudence addressing evidence is premature. Defendant's Motion as to Count Two is **DENIED**.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing (Count Four)

"[T]he duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004) (internal quotation marks omitted). This implied duty requires "that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Id.* (internal quotation marks omitted). To breach this duty, a defendant's actions must be taken in bad faith, i.e., "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Id.* at 433. A party that "performs the contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party" breaches the implied duty of good faith and fair dealing. *Geysen v. Securitas Sec. Servs. USA, Inc.*, 322 Conn. 385, 400 (2016).

Defendant first argues that this count should be dismissed because Connecticut law does not recognize a duty to negotiate in good faith. *See* Motion at 7. The duty to negotiate in good faith is a principle recognized in New York, but it applies to preliminary agreements. While Defendant is correct that the Supreme Court of Connecticut has not adopted this New York principle, it is of no moment because Plaintiffs' cause of action

does not relate to a preliminary agreement.  As Plaintiffs clarified in their opposition, they do not allege a breached duty to negotiate; rather, they allege a breach of the duty of good faith and fair dealing that is implied in the letters of intent.  *See* Opp'n at 6–7. Because this court finds that the allegations establish the letters of intent are enforceable contracts for the purposes of this motion, Defendant's first argument is unavailing.

Defendants next argue that Plaintiffs fail to allege facts establishing it acted in bad faith.  The court disagrees.  Plaintiffs allege that Defendant put pressure on Plaintiffs to sign the letters of intent—even though Plaintiffs disagreed with some of the wording—so that it could secure financing immediately.  *See* Compl. ¶¶ 21–23, 26–30.  As pleaded, it is reasonable to infer that Defendant had no intention to perform its end of the bargain and instead acted with a sinister or deceptive motive by compelling Plaintiffs to sign the letters of intent only to rescind the contracts once it was able to secure financing.  *See De La Concha of Hartford*, 269 Conn. at 432.  Given that Defendant never sent the promised final contracts, such pressure as pleaded defies the spirit of the letters of intent. *See Geysen*, 322 Conn. at 400.  Therefore, the Motion is **DENIED** as to Count Four.

### D.    CUTPA Violation (Count Five)

Under § 42-110b(a) of the Connecticut General Statutes, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  To prevail, a plaintiff must plead and ultimately prove four elements: "that the defendant has (1) engaged in unfair methods of competition or unfair or deceptive acts or practices (2) in the conduct of any trade or commerce, (3) resulting in (4) an ascertainable loss of money or property, real or personal, by the plaintiff." *Kent*, 338 Conn. at 212–13.

Defendant first argues that Plaintiffs fail to establish the first element.   In determining whether a practice is unfair or deceptive, the Supreme Court of Connecticut requires the court to consider whether the practice (1) "offends public policy as it has been established by statutes, the common law, or otherwise," even if the conduct does not violate the law; (2) is "immoral, unethical, oppressive, or unscrupulous;" or (3) "causes substantial injury to consumers."   *Id.* at 232.   When the CUTPA allegations concern an alleged breach of contract, "liability may attach when, for example, the defendant has acted in bad faith with respect to the contract."   *Id.* at 213.   As previously explained, the allegations establish that Defendant induced Plaintiffs to sign the letters of intent without adding their requested changes, because Defendant purported to need the signatures immediately to secure financing and promised to send contracts with the requested changes "tomorrow."   Compl. ¶ 27.   Because the CUTPA violation involves an alleged breach of contract and this court has already found the pleadings properly allege Defendant acted in bad faith, the court finds the pleadings satisfy the first element.   *See Kent*, 338 Conn. at 213 (citing *Levitz, Lyons & Kesselman v. Reardon Law Firm, P.C.*, No. 3:04cv00870 (JBA), 2005 WL 816987, at *5 (D. Conn. Mar. 31, 2005)); *see also Landmark Investment Grp., LLC v. Chung Family Realty P'ship, LLC*, 125 Conn. App. 678, 707–08 (Conn. App. Ct. 2010) (affirming CUTPA violation based on breach of contract where plaintiff proved nine "aggravating factors" showing a "pattern of bad faith").

Defendant next argues Plaintiffs fail to allege the fourth element: that they suffered an ascertainable loss.   An ascertainable loss is "a deprivation, detriment [or] injury that is capable of being discovered, observed or established."   *Pointe Residential Builders BH, LLC v. TMP Constr. Grp., LLC*, 213 Conn. App. 445, 459 (Conn. App. Ct. 2022).   Plaintiffs

allege they were induced to enter into material contracts of which the price of materials is "capable of being discovered, observed or established" in satisfaction of the fourth element. *Id.* Ultimately, Plaintiffs will be required to submit evidence of their ascertainable loss to succeed on their CUTPA claim. *See id.* Because such evidence cannot be considered at this stage, Defendant's Motion is **DENIED** as to the CUTPA claim.

IV.   <u>**CONCLUSION**</u>

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1.  The Motion to Dismiss (ECF No. 16) is **DENIED.**

2.  Within 14 days of this ruling, the parties are instructed to jointly file a status report indicating:

    a.  whether the parties would like to renew their settlement conference with Judge Garcia;

    b.  whether the parties consent to referral to a (different) United States Magistrate Judge to preside over a jury or a bench trial in this case; and

    c.  a reasonable dispositive motion briefing schedule.

Thereafter, the court will issue such referral(s), or will schedule the dispositive motion deadlines.

**IT IS SO ORDERED** in Hartford, Connecticut, this 21st day of February, 2024.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE